UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EZEKIEL I. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:20-cv-00952-SEB-MPB |
| | ) |
| MALDONADO, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Ezekiel Taylor alleges that, as an inmate at Marion County Jail, he was beaten and placed in unconstitutional conditions of confinement in retaliation for requesting grievance forms. The defendants move for partial summary judgment on claims against certain defendants. For the following reasons, the defendants' motion for summary judgment is **granted in part and denied in part**.

**I.    SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

1

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II. MR. TAYLOR'S COMPLAINT

Because the defendants seek summary judgment on only some claims, it is helpful for the Court to first summarize the complaint and screening order. Mr. Taylor alleged that after he requested a grievance in the Marion County Jail, the defendants removed him from a hallway at Taser point and

> deliberately took plaintiff out of camera view, where he was assaulted, kicked, punched, elbowed, slammed, deprived of food, water, toilet, and clothing, bedding, sleep, and humiliated for up to 24 hours before being threatened, falsely accused of being suicidal, stripped naked and placed into a suicide cell before being released to the general public.

Dkt. 2 at 1−2. The Court screened Mr. Taylor's complaint and identified First Amendment retaliation claims and—depending on his status as a pretrial detainee or convicted offender—Eighth or Fourteenth Amendment excessive force and conditions-of-confinement claims against the individual defendants. Dkt. 13 at 2−3.

The defendants do not seek summary judgment on excessive force claims against defendant Buchanan or conditions-of-confinement claims against defendants Foxworthy and Jabkiewicz. They seek summary judgment on all remaining claims.

## III. FACTUAL BACKGROUND

The Court takes judicial notice of the chronological case summary ("CCS") in Indiana case number 49G10-1704-CM-014710, available at mycase.in.gov, and derives the following background facts about the case from that CCS. Mr. Taylor was arrested for trespass on

2

April 21, 2017. He pleaded guilty and was sentenced on April 24, 2017, to a term of 365 days in county jail with all but five days suspended. On July 18, 2017, Mr. Taylor failed to appear for a compliance hearing, and a warrant was issued for his arrest.

On April 8, 2019, Mr. Taylor was transferred to Marion County Jail from Pendleton Correctional Facility (where he had completed serving a sentence on an unrelated matter) to attend a hearing on the failure to appear warrant.[1] Dkt. 93-1 at 3 (Taylor Depo. at 11:13−23).[2] On April 12, he woke up and was fed breakfast before his hearing. *Id.* at 4 (14:9−13). At the hearing, the trial court gave him credit for time served and ordered his release from jail as soon as possible. *Id.* at 4 (16:4−6).

Mr. Taylor returned to the jail and was sent to his dorm in unit 4T. *Id.* at 4 (16:12−15). Mr. Taylor asked about release procedures, and Deputy Maldonado informed Mr. Taylor that it could take up to 72 hours to release him. *Id.* at 4 (16:16−22). Upon learning this, Mr. Taylor requested a grievance. *Id.* at 4 (16:23−24). Deputy Maldonado told Mr. Taylor that he would need to get a grievance form from the mailman, who had already been by that day. *Id.* at 4−5 (16:24−25; 17:1). Mr. Taylor became upset because he believed he had the right to file a grievance, so he "stood [his] ground" and refused to return to the dorm until he received a grievance form. *Id.* at 5 (18:15−22). Mr. Taylor yelled at Deputy Maldonado because it was loud in the corridor. *Id.* at 5 (19:7−9). He didn't use an aggressive tone and made no physical or verbal threats. *Id.* at 5 (18:25; 19:1). Deputy Maldonado ordered Mr. Taylor to return to his dorm. *Id.* at 5 (19:7−17). When Mr. Taylor refused, Deputy Maldonado drew his Taser. Dkt. 93-1 at 5 (20:1−16). Mr. Taylor

---

[1] The defendants erroneously state that the following events occurred in April 2018 rather than April 2019.

[2] The PDF of Mr. Taylor's deposition has four pages of deposition per page. For ease of reference, the Court cites first to the page of the PDF and in parentheses to the page and lines of the deposition.

removed his shirt, went down on his knees, and moved down to the ground to let Deputy Maldonado handcuff him. *Id.* at 6 (22:22−25−23:1−6).

Jail deputies have the authority to remove inmates from a corridor for refusing to return to the dorm. Dkt. 93-2 at ¶ 7. Deputy Maldonado attested that he removed Mr. Taylor from the corridor due to his refusal to return to the dorm, not because he requested a grievance. Dkt. 93-2 at ¶¶ 7−8.

Deputy Maldonado and other officers escorted Mr. Taylor down the corridor past an elevator with a camera to an elevator without a camera. Dkt. 93-1 at 6 (23:21−23; 24:5−7). Mr. Taylor described the trip to the elevator as rough—at times being lifted off the ground—but he suffered no injuries from the walk. *Id.* at 6−7 (24:15−17; 27:19−22). When Mr. Taylor got off the elevator, Sergeant Buchanan, a member of the Correctional Emergency Response Team ("CERT"), was waiting. *Id.* at 8 (29:8−15). Deputy Maldonado handed Mr. Taylor to Sergeant Buchanan and did not see Mr. Taylor again during his shift. Dkt. 93-2 at ¶ 8; dkt. 93-1 at 9 (36:11−20).

Sergeant Buchanan and another unknown CERT officer took Mr. Taylor to holding cell 2B. Dkt. 93-1 at 9 (35:22−25−36:1−3). There, they threw him into a wall and began kicking and punching him and applying painful pressure points on him. *Id.* at 10−12 (37−46). They verbally demeaned him, saying the assault would not end until he said "uncle" and admitted that he had no rights. *Id.* at 12 (45:8−25−46:1−6). After the assault, the officers left Mr. Taylor in the cell with his handcuffs on. *Id.* at 12 (46:11−13).

Mr. Taylor was in cell 2B for several hours with no bed, bedding, or toilet. *Id.* at 12 (48:22−23); 13 (49:1−2); 16 (64:4−12). At some point, his handcuffs were removed. *Id.* at 12 (46:10−16). Mr. Taylor was allowed out of the cell once to use the bathroom but urinated on the

floor several times due to the lack of access to a bathroom. *Id.* at 13 (49:3−5; 52:1−2). Mr. Taylor did not receive lunch or dinner. *Id.* at 13 (50−51). Deputy Jabkiewicz gave meals to other inmates but refused to give Mr. Taylor dinner because he was scheduled to go home. *Id.* at 13 (51:6−10). Two other inmates were in cell 2B with Mr. Taylor and "faced worse physical abuse" than he did. *Id.* at 16 (62:14−16). Mr. Taylor asked for grievances because he wanted to alert someone to the abuse. *Id.* at 16 (62:7−10). The other inmates—who did not complain or try to assert their rights— received food, clothing, and bedding. *Id.* at 16 (62:23−25; 63:1−22).

Deputy Foxworthy arrived at his assigned floor around 10:00 p.m. and was alerted that Mr. Taylor was aggressive and unhappy because he believed he should have been released. *Id.* at 12 (48:14−20). Mr. Taylor, frustrated with the lack of food and bathroom access, decided to tie a sheet to the bars of his cell to attract attention. *Id.* at 13 (51:18−25; 52:1−2). Deputy Foxworthy recalled that Mr. Taylor also tied the sheet around his neck, and he was concerned that Mr. Taylor was trying to commit suicide. Dkt. 93-3 at ¶ 5. At that point, Deputy Thomas pointed his Taser at Mr. Taylor, and Deputy Jabkiewicz and Deputy Foxworthy entered the cell and stripped Mr. Taylor of all of his clothing. *Id.* at 13 (52:14−18). Mr. Taylor did not recall having the chance to remove the clothing himself, but he did not resist. *Id.* at 13−14 (52:21−23; 53:7−17). Mr. Taylor remained in cell 2B for an unclear length of time before being transferred naked to a separate holding cell and being provided a suicide smock. *Id.* at 14 (53:24−25; 54:1−5). Sergeant Green saw Mr. Taylor as the deputies escorted him naked, but he did not intervene to stop the deputies. *Id.* at 14 (54:10−18). Mr. Taylor believed he was removed from cell 2B and sent to suicide watch because he was asking for food, bedding, and grievances. *Id.* at 16 (62:5−10).

Deputy Foxworthy attested that he followed jail procedures after observing Mr. Taylor with the sheet. Dkt. 93-3 at ¶¶ 4−6. According to those procedures, once an inmate is determined

5

to be suicidal, (1) he is removed from the current area; (2) anything that is considered potentially harmful is taken away; (3) he is escorted to a separate holding cell where he "change[s] into a suicide smock and gown"; and (4) once medically cleared, he is assigned a segregation cell. *Id.* at ¶ 6. Deputy Foxworth's incident report does not mention Mr. Taylor being stripped and escorted naked from one cell to another. Dkt. 93-4.

Mr. Taylor was taken out of the holding cell and reprocessed, and then taken to a suicide cell by Deputy Foxworthy and Deputy Jabkiewicz. Dkt. 93-1 at 14 (56:5−20). The toilet in the cell didn't work, and there was feces in the sink. *Id.* at 20 (80:5−8). The cell had urine and feces on the toilet seat, food and crumbs on the floor, and blood and mucus on the wall. *Id.* at 21 (85:6−10). Mr. Taylor was not provided breakfast. *Id.* at 15 (58:16−17). At one point, Deputy Jabkiewicz told Mr. Taylor that he saw pictures of Mr. Taylor's son and brother on Facebook, and then bragged about his military experience and the firearms he owned. *Id.* at 18 (69:10−70: 10). Deputy Jabkiewicz also verbally berated him. *Id.* at 18 (70:14−20). Mr. Taylor felt intimidated by Deputy Jabkiewicz's statements. *Id.* at 18 (70:2−10). At some point, Mr. Taylor dozed off and was released later that day around 3:00 or 4:00 in the afternoon. *Id.* at 15 (58:24−25).

Shortly after his release, Mr. Taylor stabbed someone. *Id.* at 18 (69:17−21). He attributes the stabbing to the sleep deprivation and trauma he experienced at the jail. *Id.* Mr. Taylor had sore muscles and a limp as a result of the beating in cell 2B, and continues to suffer from "constant paranoia" and post-traumatic stress disorder. *Id.* at 17−18 (68:24−25; 72:14−17).

## IV.     DISCUSSION

Mr. Taylor alleges that the defendants used force against him and placed him in unconstitutional conditions in retaliation for his requesting grievances. The Court addresses the

claims for which the defendants seek summary judgment and clarifies the scope of the remaining claims.

### A. First Amendment Retaliation Claims

Mr. Taylor must establish three elements to prove a First Amendment retaliation claim. "First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). "Furthermore, "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive.'" *Id.* (quoting *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005)).

Retaliatory animus "can . . . be demonstrated by suspicious timing alone only when the . . . action follows on the close heels of protected expressions." *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019). "The burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *May v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). In other words, the defendants can rebut Mr. Taylor's prima facie case of retaliation "by showing that [their] conduct was not a necessary condition of the harm – the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If a defendant can establish a non-retaliatory motive for the allegedly retaliatory action, Mr. Taylor must "produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).

### i. Deputy Maldonado

Deputy Maldonado concedes for purposes of this motion that Mr. Taylor engaged in a protected activity by requesting a grievance form and suffered an adverse action when he was transferred to a holding cell. Dkt. 94 at 6, n. 3. Thus, only the third element is at issue.

Deputy Maldonado attested that he did not base any of his actions in retaliation against Mr. Taylor. Dkt. 93-2 at ¶ 8. Rather, he moved Mr. Taylor from the corridor to a holding cell because Mr. Taylor refused to return to the dorm. *Id.* at ¶ 8. Mr. Taylor admits that he refused to return to the dorm and that his actions were unruly. Dkt. 93-1 at 5 (18:18−25; 19:20−23). However, Mr. Taylor also alleges that Deputy Maldonado intentionally escorted Mr. Taylor past an elevator with cameras to an elevator without cameras. *Id.* at 6 (23:21−23; 24:5−7). From there, Deputy Maldonado handed Mr. Taylor to Deputy Buchanan and another CERT team member, who took Mr. Taylor to a cell and assaulted him. *Id.* at 19 (74:16−23) ("[A]ll I did was ask for a grievance, and I was removed from the 4T corridor and taken to 2B holding and assaulted."). A jury could infer that Deputy Maldonado deliberately placed Mr. Taylor in harm's way in retaliation for requesting a grievance. In other words, while removal from the corridor may have occurred without a request for a grievance, a transfer to a holding cell where he was assaulted was not "a necessary condition of the harm." *Greene*, 660 F.3d at 980. Accordingly, there are questions of fact that preclude judgment in Deputy Maldonado's favor on the First Amendment retaliation claim.

### ii. Deputies Foxworthy and Jabkiewicz

Mr. Taylor alleges that while he was in holding cell 2B, he was placed on suicide watch after asking Deputies Foxworthy and Jabkiewicz for grievances. There is no dispute that Mr. Taylor was not moved to a separate holding cell and prepared for suicide segregation until he tied a sheet around the bars of the cell. Dkt. 93-1 at 13 (51:18−21); dkt. 93-3 at ¶¶ 4−5. Placing Mr. Taylor on

suicide watch was consistent with jail policy. *Id.* at ¶ 6. However, a jury could find that the manner in which he was placed on suicide watch—stripped of his clothing and forced to remain in the cell naked with other inmates—was motivated by retaliatory animus. Further, Mr. Taylor alleged that he was refused food and bedding because he requested grievances while two inmates who did not complain did receive food and bedding. Accordingly, there are questions of fact that preclude judgment in Deputies Foxworthy and Jabkiewicz's favor on the First Amendment retaliation claim.

### iii. Sergeants Green and Buchanan

There is no evidence that Mr. Taylor engaged in any protected speech when he encountered Sergeants Green and Buchanan, or that his protected conduct was a motivating factor in their actions. Summary judgment is therefore granted for Sergeants Green and Buchanan on the retaliation claims against them.

### iv. Qualified Immunity

The defendants argue that they are entitled to qualified immunity on the First Amendment retaliation claims. "Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). Once a defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to defeat it by showing "two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of the alleged violation." *Id.* (cleaned up). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)). The Court can consider the elements in either order. *Id.*

Viewing the evidence in the light most favorable to Mr. Taylor, a reasonable jury could conclude that Deputy Maldonado, Deputy Foxworthy, and Deputy Jabkiewicz retaliated against Mr. Taylor because he requested grievances. Thus, moving to the second element, Mr. Taylor Harrison must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser*, 933 F.3d at 701 (quoting *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017)). He need not find "a case on all fours with the facts here," but he must point to "some settled authority that would have shown a reasonable officer in [the defendant's] position that her alleged actions violated the Constitution." *Id.* at 702 (cleaned up). The Court must look at the "specific context of the case" to determine "whether the violative nature of particular conduct is clearly established." *Id.* (internal citation and quotation marks omitted).

It's clearly established that inmates "are entitled to utilize available grievance procedures without threat of recrimination." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *see also Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) (same). "[A] transfer decision made with a retaliatory motive could be a violation of the prisoner's First Amendment right even if the transfer itself did not independently violate the Constitution." *Holleman*, 951 F.3d at 881 (citing *Babcock*, 102 F.3d at 275). Here, Deputy Maldonado moved Mr. Taylor from a corridor in a general population dorm to a holding cell where two CERT officers allegedly beat him. This is similar to other Seventh Circuit cases in which the court held that placing an inmate in a more dangerous situation (e.g. a transfer to a maximum-security facility from a minimum-security facility) constituted an adverse action. *Id.* (citing cases). Thus, there is settled authority that Deputy Maldonado's actions violated Mr. Taylor's rights. With respect to Deputies Foxworthy and

10

Jabkiewicz's conduct, there is settled authority holding that correctional officers may not conduct humiliating strip searches in retaliation for protected conduct. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). Thus, they were on notice that leaving Mr. Taylor naked in a cell and escorting him naked through the hallway was prohibited conduct if it was intended to humiliate him. Accordingly, defendants Deputy Maldonado, Deputy Foxworthy, and Deputy Jabkiewicz are not entitled to qualified immunity.

In summary, the defendants' motion for summary judgment is **granted** with respect to Mr. Taylor's First Amendment retaliation claims against Sergeants Green and Buchanan and **denied** as to his claims against Deputy Maldonado, Deputy Foxworthy, and Deputy Jabkiewicz.

### B. Excessive Force Claims

In the Court's screening order, the Court said Mr. Taylor's excessive force and conditions-of-confinement claims would proceed under the Eighth Amendment if he was a convicted prisoner or the Fourteenth Amendment if he was a pretrial detainee. As it turns out, Mr. Taylor does not fit in either category. Although he was convicted of trespass, he had been ordered released by the trial court, his sentence satisfied.

The defendants suggest that the Fourth Amendment applies, citing *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006), which explained that "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)). Mr. Taylor's situation is different: he had already been convicted of trespass. But the point is well taken that because Mr. Taylor had been ordered released when these events occurred, the Eighth Amendment deliberate indifference standard likely does not apply. That is

because a person who is not incarcerated pursuant to a conviction (which in most civil rights cases is a pretrial detainee) "possesses a constitutional right 'to be free from punishment.'" *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) ("Pretrial detainees are in a different position, because their detention is unrelated to punishment.").

The standard under the Fourth Amendment and the Fourteenth Amendment is the same: whether the defendant's actions were objectively unreasonable given the totality of the circumstances. *See Lopez*, 464 F.3d at 719; *Hardeman*, 933 F.3d at 823 (holding that the objective inquiry applicable to pretrial detainees applies to all conditions-of-confinement claims, not just those involving excessive force). Because Mr. Taylor was not in the jail as a punishment but rather because additional time was needed to process him for release, the Court finds that the Fourteenth Amendment objective inquiry applies to his excessive force and conditions-of-confinement claims.

Whether a correctional officer was objectively reasonable in his use of force depends on the facts and circumstances of each case. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene," and must take into account concerns about institutional security. *Id.* Some factors the Court may consider when assessing the reasonableness of force are:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; and effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

### i. Sergeant Green

Mr. Taylor testified that Sergeant Green used no force against him. Dkt. 93-1 at 14 (54:14−15). Any excessive force claim against him is dismissed.

### ii. Deputy Maldonado

Mr. Taylor was supposed to be released from custody, but upon his return to the jail, Deputy Maldonado informed him it could take up to three days to "process" him. Mr. Taylor became upset—reasonably so—and requested a grievance. Mr. Taylor acknowledged that he yelled because it was noisy in the jail, but he testified that he never threatened anyone. Dkt. 93-1 at 5 (19:1−9). Deputy Maldonado drew his Taser and ordered Mr. Taylor to the ground where he was handcuffed. *Id.* at 5 (4−16). Deputy Maldonado then aggressively walked him down the corridor to the elevator before he was handed over to Sergeant Buchanan. Dkt. 93-1 at 6 (23:21−23). Mr. Taylor states he never threatened or resisted anyone during the escort. *Id.* at 6 (24:19−20). Thus, one could conclude that *any* force was unreasonable under the circumstances. *See Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003) (finding it was clearly established that police officers may not "shove, push, or otherwise assault innocent citizens without any provocation" or "use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest" or posing security threat) (internal quotations omitted)).

Deputy Maldonado argues he is entitled to qualified immunity on this claim. The Court agrees. Mr. Taylor points to no authority, and the Court has located none, suggesting that an "aggressive walk" with no injury violates his right to be free from excessive force. In *Day v. Wooten*, 947 F.3d 453, 461 (7th Cir. 2020), the Seventh Circuit discussed qualified immunity in the context of the right for an arrestee to be "free from excessively tight handcuffs." The Court observed that for an officer to be liable, he must be aware that the handcuffs were causing the

arrestee pain. *Id.* at 462. Here, Mr. Taylor was not injured by the escort, and there is no evidence that he advised Deputy Maldonado of any physical discomfort during the escort. Absent a complaint of pain, "there was nothing that would have alerted [Deputy Maldonado] to the fact that a constitutional violation was looming." *Id.* (internal quotation omitted). Accordingly, Deputy Maldonado is entitled to qualified immunity, and the excessive force against him fails.

### iii. Deputies Foxworthy and Jabkiewicz

With respect to Deputies Foxworthy and Jabkiewicz, Mr. Taylor alleges only that they physically removed his clothing after he tied the bedsheet around the bars in his cell. *Id.* at 13 (52:7−10). They did not kick or punch him. *Id.* at 14 (55:1−3). They removed his clothing pursuant to jail policy regarding potentially suicidal inmates. Dkt. 93-3 at ¶ 6. Because Mr. Taylor was taking direct action that any reasonable officer would construe as a sincere effort to hurt himself, the officers' decision to remove his clothing immediately to prevent further harm was reasonable. *Kingsley*, 576 U.S. at 399−400. Therefore, any excessive force claim against Foxworthy and Jabkiewicz fails. But this is not the end of the road for Mr. Taylor's claim with respect to having his clothing removed and being forced to remain in the cell and then walk down a hallway nude, as the Court will discuss next.

### C. Conditions of Confinement

Incarcerated people are entitled to "the minimal civilized measure of life's necessities" including adequate food, water, sanitation, bedding, and other basic necessities. *Hardeman*, 933 F.3d at 820 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and citing *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) and *Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir. 1990)). Further, "continued exposure to human excrement" can violate an inmate's rights, both due to "the health concerns emphasized in *Farmer v. Brennan*, 511 U.S. 825 (1994), and the more general

14

standards of dignity embodied in the Eighth Amendment[.]" *Hardeman*, 933 F.3d at 821 (cleaned up).

The defendants seek summary judgment for any conditions-of-confinement claims against defendants Maldonado, Buchanan, and Green based on their lack of involvement with escorting Mr. Taylor to and housing him in the filthy suicide cell.

It isn't clear why the defendants frame Mr. Taylor's conditions-of-confinement claims as only pertaining to his time in the suicide cell. Recall that Mr. Taylor was housed in several cells during the relevant events. Mr. Taylor started in unit 4T (and makes no complaints about the jail conditions there). After Deputy Maldonado escorted Mr. Taylor to the elevator, Sergeant Buchanan took him to holding cell 2B, where Sergeant Buchanan and another CERT officer allegedly beat Mr. Taylor. Mr. Taylor was in holding cell 2B from the early afternoon on April 12 to early morning on April 13. In cell 2B, Mr. Taylor was handcuffed for an unspecified amount of time after the beating, allowed to use the bathroom only once, deprived of food and bedding, and stripped naked. Once stripped of his clothing, Mr. Taylor remained in the cell naked (in front of other inmates) for an unclear length of time and then was escorted naked to another cell. He was taken to holding cell 1 and given a suicide smock, and then was escorted to the suicide cell. The suicide cell lacked a functioning toilet and was soiled with excrement, food, crumbs, blood, and mucus.

"[E]xposing a person's naked body involuntarily is a severe invasion of personal privacy." *Colbruno v. Kessler*, 928 F.3d 1155, 1161−63 (10th Cir. 2019) (applying the Fourteenth Amendment objective inquiry standard to claim involving officers who walked a pretrial detainee nude through public hallways despite easy access to clothing). Thus, compelling Mr. Taylor to be naked for a prolonged period in front of others could rise to "calculated harassment unrelated to

15

prison needs" with the intent to humiliate Mr. Taylor. *Richards v. Wexford*, 2021 WL 4892160, at *3 (7th Cir. Oct. 20, 2021) (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) and citing *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009) (discussing strip searches in the Eighth Amendment context)).

Thus, far from being limited to the time he was in the suicide cell, Mr. Taylor's conditions-of-confinement claims also include the complained of conditions in 2B and his naked escort to holding cell 1. The question is whether Defendants Maldonado, Green, or Buchanan were personally responsible for these conditions. "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). For a supervisor to be liable for the conduct of his subordinates he must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

### i. Deputy Maldonado and Sergeant Buchanan

It is undisputed that Deputy Maldonado had no interaction with Mr. Taylor after he passed Mr. Taylor off to Sergeant Buchanan in the elevator. He was not present for the beating in 2B or any of the events that followed. Similarly, the allegations against Sergeant Buchanan are limited to the alleged beating itself (a claim for which he does not seek summary judgment). In other words, Sergeant Buchanan had no role in distributing food or bedding, taking away Mr. Taylor's clothing, or ensuring that the cells were clean and in working order. Accordingly, summary judgment is granted as to conditions-of-confinement claims against defendants Maldonado and

Buchanan.

### ii. Sergeant Green

Mr. Taylor alleges that Sergeant Green turned a blind eye to the constitutional violations of his subordinates. Dkt. 100 at ¶ 5. He alleges that Deputy Foxworthy and Deputy Jabkiewicz physically and verbally abused him in Sergeant Green's presence, and Sergeant Green failed to act. Dkt. 93-1 at 8−9 (32:25−33:6) and 14 (54:7−18). Thus, there is a material dispute of fact as to whether Sergeant Green turned a blind eye to the conditions of Mr. Taylor's confinement.

Sergeant Green argues he is entitled to qualified immunity, stating, "Since there is no evidence that would allow a jury to hold [him] personally liable for any decision that allegedly subjected Taylor to unconstitutional conditions of confinement, … Green [is] entitled to qualified immunity on Taylor's conditions of confinement claims." Dkt. 94 at 13−14. The Court finds this wholly underdeveloped and conclusory argument waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."). And regardless, the right to be free of the conditions of which Mr. Taylor complained was clearly established. *See Hardeman*, 933 F.3d at 820, and *Mays*, 575 F.3d at 649.

Accordingly, the motion for summary judgment for conditions-of-confinement claims against Sergeant Green is denied.

### V. CONCLUSION AND FURTHER PROCEEDINGS

In summary, the defendants' motion for summary judgment, dkt. [93], is **granted** as to First Amendment retaliation claims against Sergeants Green and Buchanan and **denied** as to retaliation claims against Deputies Maldonado, Fox, and Jabkiewicz; **granted** as to excessive force claims

against Sergeant Green, Deputy Maldonado, Deputy Foxworthy, and Deputy Jabkiewicz; **granted** as to conditions-of-confinement claims against Deputy Maldonado and Sergeant Buchanan, and **denied** as to conditions-of-confinement claims against Sergeant Green.

The claims proceeding are:

- First Amendment retaliation claims against Deputy Maldonado, Deputy Foxworthy, and Deputy Jabkiewicz;
- Fourteenth Amendment excessive force claims against Sergeant Buchanan;
- Fourteenth Amendment conditions-of-confinement claims against Deputy Foxworthy, Deputy Jabkiewicz, and Sergeant Green. This includes all allegations related to Mr. Taylor's conditions-of-confinement from his placement in cell 2B until his release.

Mr. Taylor's motion to appoint counsel, dkt. [106], is **granted**. The Court will attempt to recruit counsel to represent Mr. Taylor at settlement and, if necessary, trial. Mr. Taylor's motion for pretrial conference, dkt. [119], motion to set deadline, dkt. [121], and motion for status conference, dkt. [125], are **granted** to the extent that the Court will schedule a status conference once counsel has been appointed. Mr. Taylor's motion to correct error, dkt. [120], is **granted** to the extent that the Court acknowledges that Mr. Taylor wrote "charges" not "changes" in one of his previous motions.

The exhibit at docket 93-1, Mr. Taylor's deposition, is currently under seal despite there being no request to seal it. **The clerk is directed** to unseal docket [93-1].

    IT IS SO ORDERED.

Date: 11/30/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

18

Distribution:

EZEKIEL I. TAYLOR
150465
MIAMI – CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov